United States District Court
Southern District of Texas
**ENTERED**
September 18, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **SELENE GONZALEZ,** *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **1:25-cv-217** |
| | § | |
| **WILLACY COUNTY NAVIGATION** | § | |
| **DISTRICT**, *et al.*, | § | |
| Defendants. | § | |

**MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

The Court is in receipt of Defendant Willacy County Navigation District's "Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted" (the District's "Motion to Dismiss"). Dkt. No. 17. For the reasons provided below, it is recommended that the Court: (1) **GRANT** the District's Motion to Dismiss [Dkt. No. 17]; and (2) **DISMISS WITH PREJUDICE** all claims against the District.

## I. JURISDICTION

The Court has federal question subject matter jurisdiction over Plaintiffs' claim alleging violations of 42 U.S.C. § 1983. *See* Dkt. No. 5 at 8–14; 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Venue is proper in this Division and District because the purported events giving rise to Plaintiffs' claims occurred here. *See* Dkt. No. 5 at 2–7 (describing events and omission occurring in Willacy County, Texas); 28 U.S.C. § 1391(b)(2) (noting that a civil action may be brought in the judicial district where a "substantial part of the events or omissions giving rise to the claims occurred").

## II. PROCEDURAL BACKGROUND AND HISTORY[1]

Port Mansfield Police Department ("PMPD") Officer Rafael De Leon obtained a search warrant[2] for a property located at "9175 El Meneado Road in Lyford, Texas". Dkt. No. 5 at 4; Dkt. No. 5-3 at 5. The warrant authorized a search for two Sea-Doo watercrafts, a boat, two trailers, an outboard motor, a recreational vehicle, and "personal effect[s] to include furnishings and electronics." Dkt. No. 5-3 at 5. A separate warrant authorized the arrest of Jacinto Gonzalez ("Jacinto"), Plaintiff Selene Gonzalez's husband father of Plaintiff J.G. (collectively, the "Plaintiffs"). *Id.* at 9–10. The Plaintiffs were not named in either warrant or suspected of a crime. Dkt. No. 5 at 5.

At approximately 5:00 a.m., PMPD Chief David Mayse, Officer De Leon, and other officers executed the warrants. *Id.* at 4. Selene Gonzalez ("Gonzalez") was asleep inside a recreational vehicle ("RV") with her husband Jacinto; their thirteen-year-old son, J.G., was asleep in a nearby home with his aunt and six-year-old cousin. *Id.* Officers entered the RV without knocking or announcing, with weapons drawn. *Id.* Officers pulled Gonzalez from the bed and handcuffed her with enough force to bruise her upper arm and shoulder. *Id.* at 14, 6; Dkt. No. 5-3 at 12–15.

Gonzalez asked to dress, but officers refused, escorting her outside partially clothed. Dkt. No. 5 at 4. Officers briefly uncuffed her, then re-cuffed her and confiscated her phone when she tried to call a lawyer. *Id.* at 5–6. Officers then entered, again without announcement, the nearby home where J.G. was asleep; J.G. was awoken at gunpoint and

[1] The following facts are drawn from Plaintiffs' First Amended Complaint [Dkt. No. 5].

[2] The First Amended Complaint alleges that the warrant was obtained and executed in September 2025. *Id.* at 4. The attached warrants and returns, however, show the warrants were issued on September 22, 2023, and were executed on September 25, 2023. Dkt. No. 5-3 at 5–6, 9–10. When an exhibit contradicts an allegation in the complaint, the exhibit controls. *Stevenson v. Toce et al.*, 113 F.4th 494, 502 (5th Cir. 2024) (citing *Slight v. City of Conroe*, 87 F.4th 290, 298 (5th Cir. 2023)). The Court therefore treats the incident as occurring on September 25, 2023.

ordered to exit the home barefoot and shirtless. *Id.* at 5–6. J.G. was not handcuffed. *Id.* at 6.

When PMPD Chief Mayse saw Gonzalez in handcuffs, he told another officer that she was not supposed to be handcuffed; she was then released. *Id.* at 5. Plaintiffs allege the District caused: (1) physical injury to Gonzalez; and (2) ongoing emotional and psychological harm to both Plaintiffs. *Id.* 6–7.

Plaintiffs filed a First Amended Complaint on October 11, 2025. Dkt. No. 5 at 1. Plaintiffs assert that the District is liable as a municipality for various constitutional violations under 42 U.S.C. § 1983, including claims against named individual officers for: (1) excessive force in violation of the Fourth Amendment; (2) unreasonable search and seizure in violation of the Fourth Amendment; and (3) a denial of their substantive due process rights in violation of the Fourteenth Amendment. Dkt. No. 5 at 11–14. The District moved to dismiss all claims against it on January 20, 2026. Dkt. No. 17. To date, Plaintiffs have not responded.[3]

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a cause of action if the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009), the Supreme Court found that Rule 12(b)(6) must be

[3]Pursuant to Local Rule 7.4, "[f]ailure to respond [to a motion] will be taken as a representation of no opposition." S.D. Tex. L.R. 7.4. However, it is well-settled that a motion to dismiss cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule; the Court must review the motion to dismiss on the merits. *Garcia v. Limon*, No. 1:19-cv-120, 2019 WL 7494398, at *2 (S.D. Tex. Nov. 4, 2019) (citing *Johnson v. Pettiford*, 442 F.3d 917, 919 (5th Cir. 2006)).

read in conjunction with Rule 8(a). *Richter v. Nationstar Mortgage, LLC*, No. H–17–2021, 2017 WL 4155477, at *1 (S.D. Tex. Sept. 19, 2017). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To withstand a Rule 12(b)(6) challenge, then, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 570. This means that a complaint, taken as a whole, "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory[.]" *Id.* at 562.

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* In *Twombly*, the Supreme Court stressed that it did not impose a probability standard at the pleading stage; however, an allegation of a mere possibility of relief does not satisfy the requirement of Rule 8(a)(2) that the "plain statement" of a claim include factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Id.* at 557. A court also need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions[.]" *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

### B. 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[...]

42 U.S.C. § 1983. Section 1983 does not create substantive rights. Instead, it creates a private right of action to redress violations of federal law, such as the Fourth Amendment or Fourteenth Amendment, perpetrated by those acting under color of state law. *Colson v. Grohman*, 174 F.3d 498, 504 n. 2 (5th Cir. 1999). A plaintiff seeking relief under § 1983 must show the following: 1) the conduct complained of was committed under color of state law; and 2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States. *See Hernandez v. Maxwell*, 905 F.2d 94, 95 (5th Cir. 1990) (citing *Daniel v. Ferguson*, 839 F.2d 1124, 1128 (5th Cir. 1998)). According to the traditional definition of "acting under color of state law," the defendant in a § 1983 action must have "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). In other words, "the deprivation must be caused by the exercise of some right or privilege created by the [s]tate or by a rule of conduct imposed by the [s]tate or by a person for whom the State is responsible." *Lugar v. Edmundson Oil Co.*, 457 U.S. 922, 936 (1982). "State employment is generally sufficient to render the defendant a state actor." *West*, 487 U.S. at 49.

## C. Municipal Liability Under *Monell*

There is a distinction between Fourth Amendment claims made against government officials for actions taken under color of state law and Fourth Amendment claims made against government entities. While Fourth Amendment claims filed against government officials are deemed individual liability claims, § 1983 suits filed against those same individuals but asserting liability against their government employer are deemed official capacity suits. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Provided there has been sufficient due process, a lawsuit against government officials in their official capacity are "in all respects other than name, to be treated as a suit against the entity[.]" *Id.* at 166.

To prevail on a § 1983 excessive force claim under the Fourth Amendment against a municipality, or against both government officials and their municipality employer, "the plaintiff must show that [1] there was either an official policy or an unofficial custom, [2] adopted by the municipality, [3] that was the moving force behind the claimed constitutional violation." *Duvall v. Dallas Cnty, Tex.*, 631 F.3d 203, 209 (5th Cir. 2011) (citing *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 694 (1978)). In *Monell v. Dep't of Soc. Serv. of City of New York*, the Court held that a local government cannot be sued under § 1983 for an injury inflicted solely by its employees. *Monell*, 436 U.S. at 694. In that case, employees of the Department of Social Services and the Board of Education of the City of New York filed suit against the Department and its Commissioner, the Board and its Chancellor, and the City of New York and its mayor. *Id.* at 660-61. The employees alleged that the Board and the Department compelled pregnant employees to take unpaid leaves of absence before such leaves were medically necessary.

*Id.* The Second Circuit Court of Appeals affirmed the district court's holding that the municipality was immune from the plaintiffs' § 1983 claims. *Id.* at 662.

The Supreme Court found that, while municipalities could not be held liable under a *respondeat superior* theory, Congress intended municipalities to be included among those persons to whom § 1983 applies. *Id.* at 690–91. In finding that the municipal entity defendants' immunity defense failed and that the plaintiffs could therefore sue the municipal entity defendants directly, the Court held that "it is when execution of a government's policy or custom[…] inflicts the injury that the government as an entity is responsible under § 1983" and that "[s]ince this case unquestionably involves official policy as the moving force of the constitutional violation[…] we must reverse the judgment below." *Id.* at 694–95.

Municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). An action which is not "'pursuant to official municipal policy'" does not create liability for a municipality. *Id.* at 60 (quoting *Monell*, 436 U.S. at 691). An action is pursuant to official policy if it is a decision of a government's lawmakers, an act of its policymaking officials, or in line with "practices so persistent and widespread as to practically have the force of law." *Id.* at 61.

Liability can be created, "[i]n limited circumstances," for a government's failure to train employees concerning "their legal duty to avoid violating citizens' rights." *Id.* This is when a government entity's culpability is "most tenuous," and an entity is only liable if it has been deliberately indifferent to its citizens' rights. *Id.* For a Fourth Amendment § 1983 claim based specifically on a failure to train, the Fifth Circuit requires proof concerning "(1) whether there was an inadequacy in the City's training policy; (2) whether the City was deliberately indifferent in its adoption of that policy; or (3) whether the

inadequate training policy directly caused the constitutional violation allegedly suffered[.]" *Darden v. City of Fort Worth, Texas*, 808 F. App'x 246, 249 (5th Cir. 2020) (citing *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)). A § 1983 claim against a municipality based on a failure to train typically requires a showing of a "pattern of similar constitutional violations by untrained employees." *Id.* at 62.

## IV. DISCUSSION

The District contends that Plaintiffs have failed to identify facts "to establish a deliberately indifferent custom or policy of the District that allegedly caused a violation of their constitutional rights." Dkt. No. 17 at 18.

"It is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Thomas v. City of Galveston, Texas*, 800 F.Supp. 826, 842–44 (S.D. Tex. Aug. 1, 2011). To account for this limited access, only minimal factual allegations should be required at the motion to dismiss stage. *Id.* at 43 (citing *Hobart v. City of Stafford*, 2010 WL 3894112, at *5 (S.D. Tex. Sept. 29, 2010) ("even general facts which point to prior violations by [the police department] would allow the [plaintiffs] to survive the motion to dismiss phase")). However, a plaintiff suing a municipality must provide fair notice to the defendant. *Id.* ([fair notice] requires more than genetically restating the elements of municipal liability).

> "Allegations that provide such notice could include, but are not limited to, [(1)] past incidents of misconduct to others, [(2)] multiple harms that occurred to the plaintiff himself, [(3)] misconduct that occurred in the open, [(4)] the involvement of multiple officials in the misconduct, or [(5)] the specific topic of the challenged policy or training inadequacy."

*Id.* at 843–44 (citations omitted). In their First Amended Complaint, Plaintiffs plead no facts connecting the officers' conduct to a policy, custom, training failure, or policymaker decision. *See* Dkt. No. 5.

Considering these allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have failed to plead sufficient facts to survive a Rule 12(b)(6) motion on all theories of municipal liability against the District.

**A. Official Policy or Widespread Custom**

Plaintiffs allege that the District "maintained policies or customs that permitted unlawful searches, excessive force, and the unconstitutional treatment of bystanders," and that its tactics "demonstrate a consistent pattern or accepted practice within the department." *Id.* at 10–11. A pattern, however, requires similar and sufficiently numerous prior incidents, not a single episode. *Peterson v. City of Fort Worth*, 588 F.3d 838, 850–51 (5th Cir. 2009); *Davidson v. City of Stafford*, 848 F.3d 384, 396–97 (5th Cir. 2017). Isolated violations do not constitute the persistent, widespread practice that amounts to custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001). Allegations of this kind are routinely dismissed as "boilerplate". *Ratliff v. Aransas County, Texas*, 948 F.3d 281, 285 (5th Cir. 2020). Plaintiffs, therefore, fail to state a claim based on an official policy or widespread custom.

**B. Failure to Train & Deliberate Indifference**

Plaintiffs further allege that District failed to adequately train and supervise officers, "particularly in executing low-risk search warrants." Dkt. No. 5 at 10–11. To state such a claim, a plaintiff must plead facts showing that: (1) the entity failed to train or supervise the officers involved; (2) a causal link exists between that failure and the violation; and (3) the failure amounted to deliberate indifference. *Roberts v. City of Shreveport*, 397

F.3d 287, 292 (5th Cir. 2005). A plaintiff must allege with specificity how the training was deficient. *Id.* at 293.

Deliberate indifference ordinarily requires a pattern of similar constitutional violations by untrained employees. *Connick*, 563 U.S. at 62. A narrow single-incident exception applies only where the need for training is so obvious, and the likelihood of a violation so predictable, that the failure itself reflects deliberate indifference. *Id.* at 63–64; *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

In their First Amended Complaint, Plaintiffs assert no factual allegations concerning the training the officers received, how that training was deficient, or what the District's policymakers knew. It identifies no prior similar incidents. Plaintiffs also fail to plead any facts suggesting that this case falls within the single-incident exception. Instead, Plaintiffs' allegations rest on the inference that because a violation occurred, training must have been inadequate; that inference is fatally insufficient.

**C. Decision by Final Policy Maker**

Plaintiffs next allege that PMPD Chief Mayse, "the department's policymaker," participated in and directed the raid. Dkt. No. 5 at 11.

A single decision may give rise to municipal liability when made by an official with final policymaking authority over the relevant subject. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). Whether an official has that authority is a question of state and local law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–24 (1988) (plurality opinion)). An official's discretion to make decisions in carrying out his duties does not make him a final policymaker. *Pembaur*, 475 U.S. at 481–83; *Praprotnik*, 485 U.S. at 126–27.

A plaintiff need not identify the policymaker by name in the complaint. *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016). However, the plaintiff must still plead facts from which the Court can infer that a policy is attributable to an official with final policymaking authority. *See id.* at 285. Critically, here, Plaintiffs have failed to plead any facts showing the District's delegation of final policy making authority of police tactics to PMPD Chief Mayse. *See* Dkt. No. 5.

### D. Ratification

Finally, Plaintiffs allege that PMPD Chief Mayse ratified the unconstitutional conduct. *Id.* at 11. Ratification may support liability when authorized policymakers approve a subordinate's decision and the basis for such decision. *Praprotnik*, 485 U.S. at 127. The Fifth Circuit further limits the ratification theory to "extreme factual situations". *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 848 (5th Cir. 2009).

The First Amended Complaint, however, fails to include any allegations involving post-incident review, approval, or endorsement of the officers' conduct by anyone. *See* Dkt. No. 5. The only statement attributed to PMPD Chief Mayse, that Gonzalez should not have been cuffed, reflects disapproval rather than approval of an officer's conduct. *Id.* at 5.

## V. RECOMMENDATION

For the foregoing reasons, it is recommended that the Court: (1) **GRANT** the District' Motion to Dismiss [Dkt. No. 17]; and (2) **DISMISS WITH PREJUDICE** all claims against the District.

## VI. NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

**SIGNED** on this **18th** day of **September, 2026**, at Brownsville, Texas.

**Ignacio Torteya, III**
**United States Magistrate Judge**